## Case No. 3,120.

### CONOVER v. DOHRMAN et al.

[6 Blatchf. 60; 3 Fish. Pat. Cas. 382.][1]

Circuit Court, S. D. New York. March 9, 1868.

PATENTS—"MACHINE FOR SPLITTING WOOD"—INFRINGEMENT.

The first claim in the letters patent granted to Jacob A. Conover, May 13th, 1855, for a machine for splitting wood, namely, "a movable bed or carriage, for carrying and advancing the blocks of wood, in combination with the reciprocating cutters operating at right angles with the surface of the bed or carriage, substantially as and for the purpose specified," is infringed by the use of a machine for splitting wood, which contains every feature of the patented machine that is essential to the performance of the same result in substantially the same way, although the reciprocating cutters in it do not operate at right angles with the surface of the bed or carriage.

In equity. This was a final hearing, on pleadings and proofs, on a bill [by Jacob A. Conover against John H. Dohrman and John H. Peipho], founded on letters patent [No. 12,857], for a machine for splitting wood, issued to the plaintiff on the 13th of May, 1855. In the body of the specification, the machine was called a machine for splitting kindling wood, and this was the particular work for which it was fitted.

Charles M. Keller and P. Van Antwerp, for plaintiff.

Edwin W. Stoughton, for defendants.

SHIPMAN, District Judge. The bill in this case charges, that the defendants have infringed the first and second claims of the patent. The first claim is for "a movable bed or carriage, for carrying and advancing the blocks of wood, in combination with the reciprocating cutters operating at right angles with the surface of the bed or carriage, substantially as and for the purpose specified." The second claim reads thus: "In combination with the bed or carriage and reciprocating cutters, substantially as specified, the employment of the clearing plate through which the cutters pass, substantially as and for the purpose specified." There is a third claim in the patent, but that is not in controversy here.

The construction and operation of the machine described in the patent are substantially as follows: A bed or carriage, composed of sections linked together in the form of an endless chain, is made to travel over a tackle and around drums or wheels placed at each end. Blocks of wood, of the required length of material for fuel, are placed upright on this bed. Over the bed, at the point where the block is to receive the blow which splits it, is a cutter, made in the form of a cross, so that the block may be split into small sticks, instead

[1] [Reported by Hon. Samuel Blatchford, District Judge, and Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]

of slabs or boards, as would be the case if the cutter were composed of only one straight blade. The bed, with the block thereon, is put in motion by an intermittent feed, and the block is advanced under the cutter, at every throw of the feed mechanism, a distance measured by the range at which the feed mechanism is set. The cutter, firmly fastened above to a stock, works up and down with a reciprocating motion as the block passes under it, splitting the block as it descends, and then rising from it, so that it may be carried by the bed a step forward, when the cutter descends and splits again. As the blades of the cutter rise, they are cleared of any pieces of wood that may be clinging to them, by a clearing plate fixed above, and into which the cutter plays freely, as it rises and falls, through apertures or notches in the plate. When the machine is in motion, the bed not only carries the blocks to the point where they are split by the cutter, but it also carries off the wood after it is split. Of course this movable bed could not, of itself, resist the blow of the cutter, as it is a mere series of sections linked together, and would yield downward at every blow, unless it were supported by a firm table underneath. Now, it will be seen, that the carrying bed moves horizontally, the block to be split stands vertical or upright, and the cutter, as it rises and falls, operates vertically, and at right angles with the bed or carriage. When the cutter descends, the block is easily split, as the table over which the bed moves furnishes that resistance which a solid chopping block does to the common axe, as ordinarily used, in splitting short pieces of wood.

In the alleged infringing machine there is also a combination of parts, consisting of a movable bed or carriage, on which the block to be split is placed, a cutter, and a clearing plate, but these parts are differently distributed, so far as location is concerned, from the same parts in the plaintiff's combination. The carrying bed in the defendants' machine, as compared with that in the plaintiff's, moves across the machine instead of lengthwise, or, in other words, at right angles to the line of motion of the plaintiff's bed. This bed of the defendants' forms the bottom of a trough, the back side of this trough presenting an upright wall. The block is laid horizontally on this bed, with the base or heel of the block against the upright wall, and the top or end which is to first receive the blow of the cutter forward. Of course, the cutter is not placed over the block, but forward of it, not in a vertical, but in a horizontal position, so as to move in a line with the grain of the wood. In other words, as the block to be split lies in a horizontal position, the blade that is to split it from end to end must have a horizontal motion. The block

being placed horizontally on the bed, the latter, by an intermittent feed motion, carries it into line with the cutter, and the latter, by a reciprocating movement, enters the end of the block and splits it. The upright wall or back side of the trough, being firm, furnishes a resistance which enables the cutter to cleave the block.

Now, by a recurrence to the language of the first claim in the plaintiff's patent, it will at once be seen, that there is one feature of the description which is not found in the defendants' machine—to wit, the operation of the cutters at right angles to the bed or carriage; and I am asked to so construe this feature of the description, as to hold the patentee to it as an essential element in his invention. It would follow, from such a construction, that, inasmuch as the defendants' cutters operate, not at right angles to the carrying bed, but in the same horizontal plane with it, there is no infringement. But, in my judgment, this feature of the operation of the plaintiff's machine, as it appears in his specification, is merely descriptive of that which is incidental rather than essential. The defendants have caused it to disappear by a transposition, or different distribution, of the active elements of the organized mechanism, while they have retained every feature of the plaintiff's machine which is essential to the performance of the same result in substantially the same way. Placing their block horizontally, they must give their cutter a horizontal line of motion; and, as the point of resistance, in order to be effective, must be in the same plane, they are obliged to shift it from under the carrying bed to the rear of it, and to give its face a vertical instead of a horizontal position. In so doing, they have, in my judgment, introduced no essential element that is not found in the plaintiff's machine, nor have they omitted any. They have simply avoided embracing an incidental and unimportant feature, which is no more vital to the plaintiff's invention, than is the shadow cast by a body vital to the body itself. I hold, therefore, that the change effected by the defendants in the mechanism is colorable and not material, and does not relieve them from the charge of infringement. As that part of the claim of the patent which describes the feature in question, relates to a nonessential matter, I do not feel called upon to hold the plaintiff strictly to it. The shape of the defendants' knives is not like that of the plaintiff's; but the latter confines himself to no particular form of cutting instrument. In his patent he describes one form as preferable, but the defendants' are plainly equivalent.

I have examined the various patents put in evidence to antedate the plaintiff's invention, and compared them with it, but I do not find any which, in my judgment, embraces the same construction and ar-

rangement. A perpetual injunction must, therefore, issue, with an order of reference to a master to take an account.

[NOTE. For other cases involving this patent, see note to Conover v. Roach, Case No. 3,125.]